# FOURTH DISTRICT, 1896.

C. A. KEATING ET AL. v. MRS. ROBERT McCUTCHEN ET AL.

Delivered June 2, 1896.

**1. Corporations—Construction of Contract—Transfer of Property for Stock.**

Where a contract between an existing corporation and the promoters of a new one stipulated that such promoters should capitalize the new corporation at a certain amount, and deposit $21,000 of the stock, paid up and non-assessable, in trust for delivery on certain conditions to such existing corporation, which, after the new corporation had been organized and its stock issued and the deposit of stock provided for made, should transfer its franchises and property to the promoters, and they in turn to transfer the same to the new corporation,—the franchises and property so transferred were not to be used to pay for stock of the new corporation issued to the promoters.

**2. Pleading—Varying Written Instrument for Mistake.**

Where it is sought to vary the terms of a written instrument, on account of mistake, the pleading for that purpose, if it clearly points out the omitted provision and alleges that such provision was a part of the agreement, and was omitted from the contract by mistake, is sufficient as against a general demurrer, or a special one urged only on the ground that the pleading does not state in what particular the writing fails to express the contract.

APPEAL from Dallas.    Tried below before Hon. EDWARD GRAY.

*George H. Plowman* and *J. M. Cary*, for appellants.—1.   The subscribers to the capital stock of a corporation may pay for their stock either in money or in property, and if at the time of the organization of the company and the transfer of the franchises, etc., to it in payment of the stock issued, the franchises and contract were of the reasonable value of $100,000,—the amount of stock issued,—then such transfer in payment of such shares would give to them the status of paid up stock, and no liability could or would attach to the stockholders in favor of the corporate creditors, and the court erred in refusing to give such charge to the jury.    Branch v. Jessup, 106 U. S., 468; Morawetz on Corp., secs. 825, 826, 830; Beach on Corp., secs. 557, 558; Cook on Stockholders, secs. 18, 20, 22; Thompson on Stockholders, secs. 127, 128, 130, 134; Hayden v. Atlanta Cotton Factory, 61 Ga., 234; Foreman v. Bigelow, 4 Cliff., 508, 544; Chouteau v. Dean, 7 Mo. App., 210.

2.   Where property is received by a corporation in payment of stock subscriptions, at a valuation honestly made, it is not to be considered overvalued merely because subsequently it turns out to be so, and corporation or stockholders cannot be held or be made liable individually for the debts of the company at the instance of creditors, because at a later day the estimate fairly put upon the property at that time has be-

come modified by subsequent events and will not amount to the value which they set upon it, and the refusal of the court to give said charge was reversible error, because it correctly presented the law on that phase, and was applicable to the facts of the case, and was not given in the general charge to the jury. Coit v. Gold Amalgamating Co., 14 Fed. Rep., 12; Cook on Stockholders, secs. 46, 47, p. 72; Beach on Corp., sec. 560; Phelan v. Hagard, 3 Dill, 45; Carr v. LeFever, 27 Pa. St., 413; Young v. Erie Iron Co., 65 Mich., 111; 31 N. W. Rep., 814.

3. The defendants in their trial amendment under allegation of mutual mistake in the drafting of the contract, having shown by proper averments in what particulars the written contract failed to express the true agreement between the parties to it, and having set out the omitted inducements and considerations forming a part of the same, the court erred in sustaining plaintiffs' exception thereto on the ground that "said answer fails to state specifically in terms in what particular the said writing fails to express the contract so that the same can be reformed." Dunham v. Chatham, 21 Texas, 246; Hughes v. Delaney, 44 Texas, 532; James v. King, 2 Willson C. C., sec. 544; Boone on Code Plead., sec. 170, note 3; Story, Eq. Jur., secs. 155, 156; Stephens v. Morton, 6 Orr., 193; Finch v. Hollinger, 47 Iowa, 173; Maher v. Insurance Co., 67 N. Y., 283.

*Ledbetter & Knight* and *Harris & Bledsoe,* for appellees.—1. Bright, Lee, Dennis and their associates could not discharge their subscriptions to the original capital stock of said company, by transferring to it property in which they had no interest, and which under the express provisions of the contract belonged to the said company, secured to it by the contract, in consideration of $21,000 of its capital stock and its assumption of certain onerous obligations. Thomp. on Corp., secs. 415, 458.

2. Creditors of a corporation have a right to require the payment of subscriptions to the capital stock in full, and the trust arising in their favor cannot be defeated by a simulated payment nor by any device short of actual payment. Const. of Texas, art. 12, sec. 6; 2 Thomp. on Corp., secs. 1562, et seq; 1 Cook on Stockholders, secs. 28, et seq; Fog v. Blair, 139 U. S., 118; Coit v. North Carolina, 119 U. S., 345; Bank v. Alden, 129 U. S., 372; Camden v. Stewart, 144 U. S., 104; Scovil v. Thayer, 105 U. S., 143; 3 Am. St. Rep., note 818; 2 Morawetz on Corp., secs. 823-825; Garret v. Coal Mine, 20 S. W. Rep., 965.

JAMES, CHIEF JUSTICE.—The following contract was executed by the Anadarco Coal & Mining Company and W. A. Bright, W. N. Lee and W. A. Dennis.

"This contract, made and entered into by and between the Anadarco Coal & Mining Company, a corporation organized and existing under the laws of the Chickasaw Nation, Indian Territory, and W. A. Bright, N. M. Lee, W. A. Dennis and their associates, witnesseth: 1. W. A. Bright, W. A. Dennis, N. M. Lee and their associates agree to or-

ganize a corporation to be known and designated as the White Ash Coal & Mining Co., for the purpose of doing a mining business in the Chickasaw Nation, and to capitalize said corporation at the sum of one hundred thousand dollars. 2. And it is further agreed by the said W. A. Bright, N. M. Lee, W. A. Dennis, and their associates, that when said corporation is organized and its stock issued, that $21,000 of the stock shall be deposited in the First National Bank at Ardmore in trust for the purposes hereinafter specified. 3. It is further agreed by the Anadarco Coal & Mining Co., that when said corporation shall be organized and the stock issued and deposited as provided in the above paragraph of this agreement, that said Anadarco Coal & Mining Co. will deliver to said W. A. Bright, N. M. Lee and W. A. Dennis and their associates all the machinery, fixtures and buildings belonging to said Anadarco Coal and Mining Co., together with all rights, privileges and franchises granted said Anadarco Coal & Mining Co. under their charter to mine coal and other minerals in the Territory covered by their charter. 4. And it is further agreed that in the event the said W. A. Bright, N. M. Lee and W. A Dennis and their associates are in peaceable possession of the machinery hereby delivered to them by the said Anadarco Coal & Mining Co., for the period of two years, then the said $21,000 of the stock of the White Ash Coal & Mining Co. is to be delivered to and become the property of the Anadarco Coal & Mining Co., or if in litigation then, the stock to remain in trust until finally decided, and if adverse to the Anadarco Coal & Mining Co., it is to be returned to the White Ash Coal & Mining Co. 5. It is agreed that this contract is to be and remain in full force as long as the charter rights of the Anadarco Coal & Mining Co. lasts under its present charter or extensions that may be made to the same. 6. It is agreed that as soon as practicable the said White Ash Coal & Mining Co. shall pay to the Anadarco Coal & Mining Co. one-half cent a bushel as royalty, and that all royalties due by the charter from the Anadarco Coal & Mining Co. to the Chickasaw Nation shall be paid according to the terms of said charter by the said White Ash Coal & Mining Co. 7. It is further agreed that if at the expiration of one year the said W. A. Bright, N. M. Lee and W. A. Dennis and their associates shall fail to find coal in paying quantities, they agree to return to said Anadarco Coal & Mining Company all the machinery, fixtures and other property, in good condition, reasonable wear and tear excepted. 8. It is agreed that in the event coal is found in paying quantities and of merchantable quality, then the said W. A. Bright, N. M. Lee and W. A. Dennis and their associates shall be allowed until Jan. 1, 1899, to develop all the other materials provided for in the charter of the Anadarco Coal & Mining Company and to put the same on paying basis. 9. It is further agreed that W. A. Bright, N. M. Lee and W. A. Dennis and their associates will, upon the organization of the White Ash Coal & Mining Company, transfer and assign to said company all the rights and privileges given to them by this contract;

and it is further agreed that in the event that the capital stock of the said White Ash Coal & Mining Company shall at any time be increased, that the Anadarco Coal & Mining Company shall have delivered to them an amount of the stock equal to one-fifth of the whole amount of stock of said White Ash Coal & Mining Company.   10.  It is further agreed that the White Ash Coal & Mining Company shall deposit said $21,000 stock herein provided for with the First National Bank of Ardmore on Jan. 27, 1892, and upon their failure so to do, all rights, privileges and franchises herein granted to W. A. Bright, N. M. Lee and W. A. Dennis and their associates shall be forfeited and of no effect.   The said $21,000 stock of the White Ash Coal & Mining Company, to be so deposited, shall be paid up stock and non-assessable.   11.  It is further agreed that the White Ash Coal & Mining Company shall pay the Anadarco Coal &.Mining Company two  per cent of the gross earnings of all natural gas, petroleum and asphaltum, and to pay the treasurer of the Anadarco Coal & Mining Company all sums due the Chickasaw Nation as royalty on any minerals mined by the said Coal & Mining Company, and also on all petroleum, asphaltum and natural gas.   12.  It is further agreed that if coal is found in paying quantities within one year, then said White Ash Coal & Mining Company shall have three years from Jan. 27, 1892, to put the coal mine on a paying basis.   13.  It is further agreed that all the royalty due on the products of the White Ash Coal & Mining Company shall be payable to the treasurer of the Anadarco Coal & Mining Company on the first day of each month, or so much thereof as has been shipped or sold the preceding month.   Witness our hands and the seal of the Anadarco Coal & Mining Company, this the 16th day of November, 1891, and signed in duplicate."

It appears that the three persons named organized the White Ash Coal & Mining Co.. and assigned the property mentioned in the agreement to it, taking the $100,000 of its capital stock for the property, as paid up and non-assessable stock, and deposited $21,000 of this stock as required by the above agreement.   The new company began operations,—the said three persons and associates supplying five or six thousand dollars for the purpose, and suspended after a few months, owing various claims upon which this suit is brought in the interest of plaintiffs and others who might desire to join.   The main defense is that the defendant stockholders are not liable because their stock was paid up, and not subject to assessments.

It is our opinion that the contract as written did not contemplate that this property should be used as payments for the stock.   There are various of its provisions that would admit of no other interpretation of its meaning.

The three promoters were required by the contract to assign the property to the new corporation when organized; thus making it, so far as Bright and associates were concerned, the equitable owner of the property, subject to the provisions of the contract, the assignment therefore being a formality.   It provides also that the stock should be issued,

before delivery of the property to the three persons, and hence before its transfer to the new company. It provides also that the new company should be capitalized at the sum of $100,000 by Bright, Dennis, Lee and associates. If the Anadarco Coal & Mining Co.'s property was to pay for the stock, then the company would be capitalized by it, and not by the three persons who contracted to do so. Finally there was no necessity of stipulating that the $21,000 of the stock to go to the Anadarco Coal & Mining Company, should be paid up and non-assessable, if it had been intended that the property should be the consideration of the stock.

Inasmuch as there was no pretense that more than $6000 had been paid in by the stockholders, we think that, if the case is to be governed by the contract as written, a verdict was properly instructed for the plaintiff.

This leads us to the eighth, ninth, eleventh and eighteenth assignments. Defendants filed a trial amendment stating that certain matters were agreed on in the transaction between Bright and associates and the Anadarco Coal & Mining Company, which were by mistake omitted from the written contract. Among other omissions it was averred that it was understood and agreed that the transfer to the White Ash Coal & Mining Co. of the franchises, etc., which were valued by the contracting parties at $100,000, was to be for $100,000 in paid up stock.

The contract was not so doubtful or ambiguous in its expression on this subject as to admit the proof by way of explanation, nor can the omitted matter be said to not vary the provisions of the contract, and to consist of additional terms not in conflict with it. The omitted expression could obtain consideration only through proper averments of fraud, accident or mistake resulting in the contract being made to express a different agreement than that made by the parties.

In such cases, as is stated in Railway v. Shirley, 45 Texas, 377, "he who seeks to rectify an instrument on the ground of mistake must be able to prove not only that there was a mistake, but must be able to show exactly and precisely the form to which the instrument ought to be brought, in order that it may be set right according to what was really intended, and must be able to establish in the clearest and most satisfactory manner that the alleged intention of the parties to which he desires to make it conformable continued concurrently in the minds of the parties down to the time of its execution." Moore v. Giesecke, 76 Texas, 547.

We think it is meant by this that it is necessary to point out distinctly the provision claimed to have been omitted, and in this respect the trial amendment was sufficient in the material matter above mentioned. It moreover states that it was a part of the agreement, and was omitted from the contract by mistake. This pleading was sufficient to admit the necessary proof. Although not perfect by any means, it contains the material averments that this was a part of the agreement, and that it was omitted from the writing by mutual mistake of

the parties.    This would have made it good as against a general de-murrer.

If such provision were incorporated into the agreement, it would change the effect which it would otherwise be necessary to give to it, in reference to whether or not it was intended that this property should pay for the stock.

The only demurrer was a special one, on the ground that it failed to state specifically in terms in what particular the writing fails to express the contract so that the same can be reformed.  This exception, al-though sustained by the court, was not well taken.

The court, in our judgment, erred in striking out the trial amend-ment upon said special demurrer, and in refusing to hear evidence in support of its averments.

It does not follow, however, that if the defendants be successful in establishing their averments, this would settle the case in their favor. The issue of inadequacy of the property and the five or six thousand dollars as payment for the stock would remain, the burden of proof on this issue resting on plaintiff.

The above being the only error that we think can be said to exist in the record, it is not necessary that we should discuss the case further.

Reversed and remanded.

*Reversed and remanded.*